May it please the Court, my name is E.P. I'd like to thank the Court for allowing me to proceed under a pseudonym, representing myself and my son, G.M. This is not a case about whether the individualized education program the school system provided was inadequate under the Individuals with Disabilities Education Act. This is a case about whether it is lawful to do nothing to help a child with significant and complex learning disabilities. No one disputes that my son, G.M., has dyslexia, dysgraphia, and ADHD. The question is whether he should have been found eligible for special education. There are so many errors in the Administrative Law Judge's findings that were set forth in my briefing that I cannot possibly talk about all of them here today. But I want to highlight a few issues that compel the conclusion that my son is entitled to be found eligible for special education and the relief sought. If factually findings are not regularly made, the findings are not entitled to deference. The circuit has determined that findings of fact are not regularly made when they are reached through a process that is far from the accepted norm of a fact-finding process. The ALJ did not follow normal fact-finding processes for at least five reasons, each of which go to how the ALJ made her decision, including one. The ALJ employed an incorrect legal standard, finding that G.M. was not eligible for special education because he was, quote, improving. Whether a student is making adequate progress is the standard for determining whether an IEP that was actually provided to the student is sufficient. IEPs are designed to help a student improve their skills, so it makes sense that the courts would look at whether a student was improving to assess whether that IEP that was put in place was sufficient. Would you be so kind as to lower your microphone just a little bit? I am very short. All right. That's perfect. Great. Whether a child improves, however, cannot be the basis for eligibility determinations, because it would render a child that is very far below state-grade level standards unable to access special education if they make any progress at all. Counsel, this seems to be getting to the merits of the decision, right? We don't decide that an ALJ's findings weren't reasonably made. He didn't follow the typical process for finding facts just because we might think that he applied the wrong standard, right? That could be an error, right, but we can review that de novo. But applying the wrong standard isn't tossing a flipping a coin, right? Whether the findings are regularly made is a different standard and a pretty high one that's distinct from the merits of the opinion. Well, applying the wrong legal standard to reach a finding effect would be a basis for saying it wasn't regularly made, because if you don't apply the right standard... Where have we said that? Well, the correct legal standard is set forth by the statute. And so if the court doesn't apply the right legal standard, you can, as you said, you can apply de novo review, not this modified de novo review. But I think it does go to whether or not those facts were regularly made if you're not even applying the statutory standard that's applied. There are additional reasons why this opinion was not regularly made, and I can move on to those at this time. The second reason is that the ALJ ignored the contemporaneous, non-testimonial, voluminous written records of GM's poor classroom performance, including its teachers' own repeated statements that writing was not on grade level. And when there's overwhelming evidence like that that controverts the witness's trial testimony, it strays from the normal fact-finding process, not to address any of it. The third reason is that the ALJ improperly found that I waived an argument that the school system had withheld my child's education records from me, as well as their own analysis of that data. And I think Judge Rushing's comment really got to the heart of all this, and that is the whole emphasis of our previous IDEA decisions has been on the soundness of process. And I worry about any circuit court coming in hospitable to fact-finders, and here is the district court found this is about the most thorough ALJ decision that I've seen in a while. He listens to both parties' experts. It's a multi-day hearing, a 53-page written decision. It's the very opposite of arbitrariness. And our decisional loss is look at the process, and if it's not arbitrary, and this one is about as far from being arbitrary as I can see, then the district court did exactly what we wanted it to do in concentrating on the findings and the basis for the findings and the process. And when a district court follows Fourth Circuit precedent to a T, we would back it up, just as when we try to follow the Supreme Court guidance to a T, we'd like to be backed up, too. But he did a really good job. Well, it can't be the standard that if you have a hearing and a written opinion that it has to have been regularly made. That would render a parents' appeal right illusory. So that standard can't be sustained. What I'm arguing here is that even if you look at the case law about regularly made, you don't actually have to prove that somebody flipped a coin, right, in making that decision. And there is case law that talks about where the non-testimonial record controverts the testimony at the hearing, that that can be a reason to overturn the decision. And under this modified de novo standard, the court is free to decide under the preponderance of evidence standard when considered as a whole, it warrants a different conclusion. And those cases cited in my brief are S.S., Sumter, Gertzmeyer, the 9 case, and Jennifer D. So there's ample case law that shows that even if the court was to find that there's some deference that's due to the court's underlying decision. But the district court didn't just make findings. He did explain them. And isn't it a little awkward for you that the Howard County ACPS experts had a rather extensive familiarity with GM and that your own experts had either never met him or were hired to spend no more than an hour? And the district court goes into that and he says, okay, I'll find the Howard School Board experts more credible because they have much greater familiarity with the case. I mean, it's not a flip of the coin. He's stating what he's finding and why he's finding it. The credibility determinations that were based on that the school system witnesses had daily contact with my son are, it's another reason that this case was irregularly made. Because that is a flawed factual finding. The only witness that had daily contact with my son was his classroom teacher and me as his parent. And in one sentence, in this opinion, she dismisses all of my testimony on the basis that I was not an educator. Well, neither is any parent. And under the IDEA, parents are a full member of the IEP team. And they are, it's crucial. The ALJ was weighing the evidence, right? She didn't say I'm going to disregard everything you say, but said Ms. Clark sees GM every day. And so I weigh Ms. Clark's testimony more heavily. And these other folks are experts. They may not see him every day, right? That might have been incorrect. But I consider them to be experts in a way that a mother, although she has a lot of knowledge about her son, is not an educational expert. I mean, the courts or the ALJ is making these statements and weighing the evidence. And we can look at the evidence and assess it ourselves as well. And there seems to be, you know, Ms. Clark thought GM was, you know, achieving, that he could move from grade to grade. Even though she thought he had a deficiency in writing, other folks performed tests and found that he was, you know, average in writing. There's a lot kind of going both ways. So why don't we defer, at least in some bit, to the ALJ who saw, heard the testimony, reviewed all this carefully, weighed this evidence, and, you know, as our case law suggests, even defer in some measure to the school who had this contact with him all the time. And I acknowledge you did as well. But, you know, they are the educators here, and we're not trying to overly intervene more than the statute would have us do. So I'm glad you mentioned Ms. Clark's testimony. Because actually what she testified at trial was that he was not meeting writing standards. And, in fact, she repeatedly, consistently, in referral forms, at the IEP table, in report cards, over and over again, said that he actually wasn't writing at all, so much so that she could not even assess his writing ability. How can you credit that testimony even at trial? She consistently testified with that. And yet they still found that he was writing on grade level based on one assessment. One assessment, and the IDEA talks about you can't use one data point to overcome all of the other data points. Dr. Morrison's testing showed that he wasn't writing on grade level and that he was dysgraphic along with dyslexia, which impacts his writing ability. Another outside expert, Dina Safer, found the same thing with his writing ability. His classroom materials, the board 21, which was withheld from me and never produced until five days before trial, admits that his writing was such that it wasn't even readable because there were so many errors in it. In fact, at no point other than this very short assessment that was given on writing, one assessment, never replicated in the classroom. My expert testified that there was actually a flawed testing administration because they tested him over four days for a half hour, which can elevate the scores inappropriately because it's not mimicking second grade expectations. But Judge Rushing's point is why isn't some difference due to the ALJ in a situation like this where there is maybe evidence going both ways, but you have a lot of evidence that this individual is being extensively tested. And he is, if I had just to describe it in lay terms, he's an average to slightly below average student. In accordance with the Maryland regulations, he's passing most of his tests certainly at the second grade level. And he's progressing at grade level. And if we say that this individual is typical of hundreds of thousands, if not millions, of school children who are average or maybe slightly below average and who are having difficulty sitting still all the way through class. We all know people, boys who have difficulty sitting still through an entire class. And so what I'm worried about is we're taking in hundreds of thousands of people under the IDEA, under that statute. And it certainly goes beyond what the Maryland implementing regulations require. And we could just expand the IDEA exponentially and the need of school districts to reimburse exponentially. I don't think Congress wrote the statute. I know they wrote it to cover individuals with disabilities. But this seems to me to be open-ended and take into account an entire universe of students who are performing well enough. Your Honor, this is not that case. His average score, when you look at composites, is a misreading of that test result. Because he's in the fifth percentile for kids with decoding non-real words. He's in the ninth percentile. All of the classic errors, he is well, well below. And it is misleading. That's for the ALJ. That particular point is exactly the point you should make before the administrative law judge. I'm sure you probably did. He didn't cut you off. I wanted to make one other point. In AB v. Smith, which is cited in my papers, this circuit said, Credibility-based findings deserve deference unless non-testimonial extrinsic evidence in the record would justify a contrary conclusion or unless the record read in its entirety would compel a contrary conclusion. This is that case. When you look at all of the record evidence of his reading rate being so slow that he's not even making it close to the first grade rate, that record cannot be overcome by self-serving statements made by the school system witnesses that are not reading the test results the correct way as testified by a neuropsychologist with 30 years of experience in specifically dyslexia identification. Thank you. Mr. Nussbaum, we'd be pleased to hear from you. Thank you very much, Your Honor. And good morning, and may it please the Court. I'm Andy Nussbaum. I represent the appellees here at the Howard County Public School System and its superintendent. I wanted to read one thing from my brief just to start off by countering something that the parent said when she was up here. Contrary to her argument, this case is not about whether it is lawful for the school system to do nothing to help her child. This case has to do with whether the child has been appropriately found not to meet the eligibility requirements under the IDEA. The appeal involves the IDEA, as you all know, a federal statute that requires public school systems to provide a free, appropriate public education to eligible students with disabilities. Not every child who struggles in school is considered disabled under the Act, and there are certain criteria that must be made in order to determine whether a child is, in fact, eligible under the IDEA. Unlike the Americans with Disabilities Act, the ADA, and Section 504 of the Rehabilitation Act, the IDEA provides a list of 13 specific disabling conditions, each one of which has criteria that must be met in order to qualify as a student with a disability. Moreover, in addition to meeting those criteria, the Act also has a requirement that a student must need special education and related services by reason of the disability. The process for determining eligibility is spelled out in the IDEA in federal and state regulations, as well as in Maryland by the Maryland State Department of Education. It generally requires a meeting of a group of qualified professionals and the parents, and that group in Maryland is known as the IEP team. The Act also provides for a review process, which allows a parent to seek a due process hearing if they disagree. In Maryland, that hearing is heard by, as you all know, an administrative law judge from the Maryland Office of Administrative Hearings. So, counsel, can I interrupt you just to pursue a couple of matters? Let's assume you have a situation where a student is unquestionably below standard in, say, writing. This is hypothetical, I know your argument, and that ALJ have evidence on both sides here. But if a student is unquestionably below the grade standards in writing, and even if they're getting better, never achieves the standard result, but they are at the grade level in others, is that a situation for which specialized education services are appropriate? Your Honor, the IDEA and state regs in Maryland, and state guidance in Maryland, has some specific language to look at in terms of determining eligibility under the category of specific learning disability, which a deficit in writing could be, not necessarily is, but could be. And meeting state standards alone is not the test. So it's not a question, and that's where I was going to say later, in focusing on the question of meeting state standards, which the parent does in her brief, that misses the point and misses the argument. 34 CFR 300.309A1, which is in the brief, provides that a specific learning disability finding may be made if the student, quote, does not achieve adequately for the child's age or to meet state approved standards. Achieving adequately doesn't automatically equate with meeting state standards. As set forth in our brief at pages 6 and 7, the term achieving adequately in Maryland is determined by looking at whether, and I know this is getting very wordy, and I needed to hear from experts to explain what this meant, but the terminology says that the team, the IP team, has to look at whether the student exhibits a pattern of strengths and weaknesses in performance, achievement, or both relative to age, state standards, or intellectual development. That's why we have experts who testify about this stuff. The Maryland State Department of Education has issued guidelines that summarize that what the IEP team is looking for is inadequate achievement. So let me... Sure. I mean, I appreciate the level of detail there. I'm sorry. No, no, no, that's responsive. I'm not complaining. So assume, let me adjust my question. Assume a student is not achieving adequately or making the grade level standards in writing. If that is the case, under Maryland implementing regulations and the statute, are special education services required? That's the first step. Yes, and in answer to your question, and I'm not trying to get too wordy or to avoid it, yes, the first step in determining a specific learning disability, because that could be in reading, in math, in written language, something else too. So yes, that's the first step in determining... My point was really, if you're not achieving adequately or meeting the grade level in one area, but are in other areas, you're entitled to services at least in that one area. Or is that right? Well, that's the first step. The next step is, does the student require special education in order to remedy that disability? Because some students, and I'll talk about this in a few minutes. I've got time. Some students are able to remediate the concerns that they have in writing or in math or any of those other things through general education. So the question then, you're correct, the first part is, is there a specific learning disability in writing? If yes, then the team, the IEP team, goes to the next step, which is, is there a need for special education to remedy? I think the question was a good one, and I think your response is a good one, because there are a lot of people, a lot of students who are generally able, but maybe lag behind in one subject. And there are a whole lot of things that the school district can do without coming under the umbrella of federal regulation and special education services. You know, I had classmates and I myself were in a situation where we were, the classmates were behind in foreign languages, which we thought was very important. And so what the language teacher did, he said, I can help you folks. Why don't you come by after school for 30 minutes three times a week and listen to these tapes and we can get you more conversant in the foreign language. And all kinds of teachers have helped individual students regain proficiency and keep up, that's what a good teacher does. But that doesn't necessarily mean that you come under the umbrella of the IDEA and the special education services. And what they're looking for here is whether the individual here is entitled to reimbursement for the private school experience, for the private school year that was spent there. Of course, the school district's budget is not inexhaustible, even with federal aid. And, but that's a question, it's a question of reimbursement. But, I mean, I think it's important to realize that not everything, not everything needs to be under a federal regulation and under a federal statute. That there can be all kinds of assistance and help and teacher concern and the rest that doesn't subject everything to all of these requirements. Well, and just to add to that, Your Honor, you're right. The teacher in this case, the second grade teacher, did testify as to some of the supports that she was providing to the student in her classroom, which were non-special education. And I will add, and I was flipping pages here while you were talking because I wanted to look for this reference. During this process, and again, going back to the original point, that this is not a case of the school system refusing to help. During this process, the school system did recommend a Section 504 plan, which has different criteria and different qualifications for students, because this student would have qualified under Section 504, but the parent in this case rejected that offer. And that's a Joint Appendix 272 and 295. I just wanted to find the site. Let me follow up on one thing, because you were talking about, and I think appropriately so, are you achieving or meeting the standard being a step, and then would special education services, are they necessary? And if not, I appreciate the fact that that doesn't apply. It brings me to one aspect of the ALJ's opinion, in particular the special education services related to Orton-Gillingham. Right. And the ALJ rejected that as a special education service because it could be used for folks without the particular disability. That's correct. Now, in fairness, there was also an alternative reason, which is that the assistance could be provided a different way, which is what you're talking about. But it strikes me as potentially dangerous and maybe not right that the fact that you can use a particular education method for students without disability to mean that it is not special for folks who have dyslexia. I don't think there's any real question. I mean, all you've got to do is Google a little bit to know that Orton-Gillingham is better for students with dyslexia and is often sought for people with that condition. So I was just, and I don't think that ALJ's opinion hinges on that, but the fact that a particular method of education might also provide benefits for folks without the disability surely cannot be a reason that, as a category, a type of services don't qualify. Well, so let me sort of try to address that question. The issue about special education, and it's used, and the term specially designed instruction is used sort of interchangeably as well. And I wanted to get to my notes for one second. Oh, the court in Miller v. Charlotte-Mecklenburg, which was a special education case heard by this court, the court noted that not every student who's struggling in school is entitled to special education. Its protections are limited to students who have a qualifying disability and who, for that reason, need special education services. And the court further noted in that case that a student does not need special education if the student is already getting what would qualify as a free appropriate public education without them. That's a fair point, but that's not what the ALJ said. The ALJ said Fortin-Gillingham is not a special education services because at times it might be used by people without the learning disability. Well, it depends. Well, it doesn't depend. Did I finish my question? I'm sorry, I apologize. The ALJ said that. Now, whether that's right or wrong may depend, but the ALJ said that. And that strikes me as an incorrect statement of the law. Now, the ALJ has another reason that I alluded to earlier, that this particular student, they thought, was able to achieve the results without that. That's what the law talks about. But just because everyone takes aspirin doesn't mean it's effective for people who have blood clots. And that's the essential way the ALJ referred to the Fortin-Gillingham method, and I think that's not a reason to overturn the decision because there was an alternative reason. But I didn't see any support, either educationally or legally, for that statement. Well, the support legally would be this. When an IEP team looks at qualifying a student as disabled, as I said before, it looks at the criteria set forth in the statute, and then it looks at does the student need specially designed instruction. So certain things are specially designed instruction, certain things are not. As Judge Wilkinson said, there's a whole list of good teaching methodologies that are not special education because they're given in a classroom. What the testimony was in this case was that Orton-Gillingham is a reading approach that can be used for students with dyslexia and with specific learning disability, but it's also Orton-Gillingham is an approach that can be used for general education students as well. And what the testimony was was that even Ms. Taylor, who was one of the parents' expert witnesses, testified that Orton-Gillingham can be used for general education students. Now, I'm not saying, and I agree with you, Your Honor, it's not, well, if it can be used for both, that automatically means a student can't be special ed. But in looking at all of the data and information that's presented to an IEP team, if the only thing that they're looking at is, well, this student would benefit from Orton-Gillingham, that's not enough to qualify them for special ed. I don't think there's any question about that. But if the record in a case for a child with dyslexia showed that they were not achieving adequately or meeting grade level, and that non-special education services weren't helping them do that, and Orton-Gillingham did, that would be an appropriate method to consider to achieve a FAPE. And the fact that it might also be used for students without dyslexia wouldn't disqualify it. Absolutely. And I think the ALJ would have agreed with that. I'm not sure what... If it would, it had a strange way of writing it. That may well be. I'm not going to take the time to flip through it, but that may be what I'm suggesting is the evidence, and maybe that's her shorthand. But what the evidence in this case showed was that the only special education, the only specially designed instruction that the parent's witnesses referred to was Orton-Gillingham. I mean, Dr. Collada said that the student needs Orton-Gillingham. And the point in the testimony, at least, was that Orton-Gillingham is not solely a special ed methodology, it can be used with general education. I think what we're suggesting, and I think it's a good suggestion, is that this is the kind of area which is best to go student by student by student by student and to steer clear of the kind of broad categorical statements that my colleague is rightly concerned about. It's just this area that says, the facts, please, just the facts. And it's something that you go student by student on, and these broad statements about this can never be this, this can never be that, they get you into trouble. But when you look at this individual and the progress he was making and the effects that assistance resulted in improvement and all the rest, that's a different approach from saying that this is, this can never be, this can never manifest a need for special education under any circumstances whatsoever. The question is, what are the circumstances here? I'd like to make three quick points before I run out of time completely. First is that, I just want to make it clear, I was not intending to be rude or discourteous by referring to the parent as parent without giving her name, but I know that this is where we are in this case, so I just want to make sure that that was not out of any rudeness or discourtesy. Secondly, the brief makes clear that regularly made by this court's interpretations of that refer to the process that's being utilized, and in this case, clearly there was no coin flipping, dart throwing, or other abdication of responsibilities. I'm going to interrupt your, sorry. That's okay. I hate to do it when you say you have three points and you're about to get to the third, but before we totally leave Orton-Gillingham, I just wanted to check about what the school's position is on the tutor. The school's position in the brief seemed to be that Orton-Gillingham, in certain circumstances, can be special ed and in some circumstances isn't. I don't know that it actually depends on how certified you are, which I think is partially your position, but the tutor that he was seeing for, what was it, six months at the beginning of 2018, what's the school's position on whether that tutor, as she was instructing him in that particular method, was engaging in special education or not? I don't remember if there was specific testimony, but I think not, and I don't remember if that tutor was certified in special education or not. I do know that Ms. Taylor, who is the parent's expert, testified that she didn't have any idea whether the teachers at the private school who were implementing Orton-Gillingham were special ed certified. In answer to your question specifically, I don't recall specific testimony, but I do know as far as the school system was concerned, that was not special education. That was outside tutoring that lots of kids get in lots of different areas. Thank you. I'm running out of time. Witness credibility we discussed or has been discussed, and that's in the briefs, the special education we talked about. The procedural issues, I just wanted again to refer the court to the TB case, which is in our brief and discussed where this court referred to procedural issues as not being, as some procedural issues as being harmless if they don't impact the student's opportunities. In this case, the substantive issues are that the student was found not to be disabled under the act, and as I cited to a couple of other cases besides TB, the implication, the RB case from the Ninth Circuit, the implication that a procedural violation can result in an otherwise ineligible student becoming eligible makes no sense logically or legally. And I just wanted to conclude by referencing the court to the comments that were made in this court's decision in AB versus Lawson seemed to be applicable here. The court noted in that case that the arguments made by the parents there indicate that they do not understand the role of the fact finder and in essence their argument is, quote, reducible to the sour grapes claim that the ALJ was simply wrong in failing to rely on the testimony of the parent's experts. It's our position, Your Honors, that the arguments that have been made by the parent is essentially a claim that the ALJ wrongly relied on the testimony and evidence offered by the school system rather than on the testimony and evidence offered by the parent through counsel at that time and her witnesses. I would submit that the parent has not offered any valid reason for the court to reverse the decision and would request that the district court's decision be affirmed. I'm out of time. Thank you very much. All right. We're happy to hear from you in rebuttal. Yes, Your Honor. So we alluded to the fact that the IDA has specific categories of eligibility. There are four that are relevant here. Written expression, basic reading skills, reading fluency, and reading comprehension. And it's not just that my son wasn't doing well in a specific subject. It was that he was not reading fluently. And when you look at the right standard, you look at fluency. By state law, it is rate plus accuracy. The school system, all of their witnesses testified that he was moving levels. That was only based on accuracy. And I didn't understand that to be the case because they had withheld documents from me that showed what they were relying on. They testified that rate was optional. It is a separate category. Fluency is a category that is made up of accuracy and rate. And he was not moving his rate. His rate was so far below even the first grade standard. This is not a child who was like just average and moving through the school system. This was a child that when you looked at his subtest scores, which is what's appropriate for a child with dyslexia, you have to look at the subtest scores because when you look at the composite. Were these points brought up before the ALJ? These were before the ALJ, but what I'm arguing is that the non-testimonial extrinsic evidence that was in the case overrides the school system's statements that are incongruent with that. With all respect, because I really appreciate the commitment of parents in these cases and the like, but we can't relitigate facts here. We can't listen to the experts. We don't review the test scores. What we are trying to assure is that your client got a fair shake and that nobody just brushed it off or dusted it off and that you got the kind of careful hearing that you deserve. I couldn't respect more because these cases always feature parents who are very concerned about their children, and that's the best thing in the world. But I think our job, since we can't listen to the evidence, we want to make sure that people do listen to the evidence. Because what you have to say is deserving of a lot of attention and respect. But I just want you to understand what the limits of our role really are. I understand that I'm not asking you to relitigate the case. I'm asking you to look at whether or not this was regularly made. And one of the other reasons that this is not regularly made is that the ALJ found that my argument about withholding the evidence was waived. And that is categorically not true. These issues were raised in the hearing request, and we couldn't put our arguments about 421 into the hearing request because they didn't produce it until after the hearing request was filed. And it was tried by consent because it was part of a motion. It was certainly raised throughout the hearing. And it is critical. It was not regularly made, and the error was not harmless when the very things that I was saying that he was reading at an incredibly slow rate was actually in their records. They withheld that information to me. Why? Because it would have supported that he needed special education. To many of the other points. But just to be clear, the ALJ and the district court and we have that information in front of us when we make our decisions, right? You have that information before you, and you can look at, when you look at the record in its totality, whether or not the proponents of the evidence would have shown that he was eligible for special education. There was some discussion that my child was provided with general ed supports and that that was enough and that a good teacher can move someone, but that didn't happen here. If you look at his fourth quarter report card in second grade, it says the teacher, he had so many missing and incomplete assignments that the teacher could not even assess his abilities in writing. That is not a student who is performing and meeting grade level expectations. It is a contorted argument to say that the law doesn't require that you actually meet the standards. What are we supposed to speculate and say, you know, he might meet those standards in the future and so I guess we should just wait until he's so, so, so far behind that we can't possibly ever catch him up. So the last piece that I wanted to say was, in this case, if you add together the application of the wrong legal standard of improvement, a record chock full of evidence that contradicts the ALJ's factual findings, the impactful procedural error of withholding data and the evaluation, and the ALJ's disregard of parental input, as well as the school system's misreading of the test results relying on composite scores when his subset schoolers did not justify that, demands reversal. Thank you. All right, we certainly appreciate your argument, Mr. Nussbaum. We appreciate your argument as well. Thank you. Thank you both.  Understood, Your Honor. My colleagues will be down with you in a second.
judges: J. Harvie Wilkinson III, A. Marvin Quattlebaum Jr., Allison J. Rushing